IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFERY R. WERNER<br><br>*Plaintiff*,<br><br>v.<br><br>ELITE DAILY, INC.,<br><br>and<br><br>DAVID ARABOV<br><br>and<br><br>DOES 1-10, inclusive,<br><br>*Defendants*. | CIVIL ACTION NO.<br>15-CV-06234 |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiff Jeffery R. Werner ("Mr. Werner") complains against Defendants Elite Daily, Inc. ("Elite Daily"), David Arabov, and Does 1-10, seeking monetary relief, alleging as follows:

1.      The address of each named party is as follows: JEFFERY R. WERNER, 4910 1/4 McConnell Ave., Los Angeles, CA 90066; ELITE DAILY, INC., 333 Park Avenue South, Suite 2B, New York, NY 10010; and the office address of DAVID ARABOV is 333 Park Avenue South, Suite 2B, New York, NY 10010.

2. This is an action for direct and contributory copyright infringement of a professional photographer's work arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.,* and for removing copyright management information from the work in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over the copyright infringement claim, with jurisdiction vested in this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights).

4. This Court has general personal jurisdiction over the Defendants because they do continuous and systematic business in Manhattan, New York City, the location of Elite Daily's principal place of business.

5. Venue is proper pursuant to 28 U.S.C. § 1400(a) (venue in copyright actions) as Defendants may be found in this District where it is subject to the Court's jurisdiction.  In addition, venue is proper under 28 U.S.C. 1391(1) (defendant's residence) and 28 U.S.C. 1391 (2) (where actions occurred).

## THE PARTIES

6. Plaintiff, Jeffery Werner, is an individual who resides in Los Angeles, California.  He is the owner of the copyrights to the photographs that are the subject of this action.

7. Defendant, Elite Daily, Inc. ("Elite Daily"), is a corporation organized and existing under the laws of the state of Delaware and is doing business as "ELITEDAILY.COM" from offices at the above-referenced address in New York City.

8. Defendant, David Arabov ("Mr. Arabov"), is a natural person who is believed on information and belief to reside in New York, NY, whose regular place of business is in New York. On information and belief, he co-founded and is employed by Elite Daily as its Chief Executive Officer.

9. Defendants DOES 1 through 10, inclusive, are other parties who have infringed Plaintiff's copyrights, have contributed to the infringement of Plaintiff's copyrights, or have engaged in one or more of the wrongful practices alleged herein including, but not limited to, employees, agents, and advisors of Elite Daily, its investors, internet-related service vendors, and advertisers who knowingly abetted and profited from the company's illegal practices. The true names, whether corporate, individual or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Mr. Werner, who therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when that information has been ascertained in discovery.

10. Each of the parties herein named as DOES 1-10 is responsible in some manner or fashion and is liable and responsible on the facts alleged herein for all the relief sought. Defendants are jointly and severally liable for all acts of infringement described herein.

## FACTS

### Mr. Werner is a Professional Photographer

11. Mr. Werner has over 30 years of experience as a professional photographer. His work has appeared in magazines world-wide as covers, features, and editorial coverage in publications such as *Life, Time, Newsweek, People, Marie Claire,*

*FHM, Smithsonian, Playboy, Maxim, In Touch, Daily Mail, Penthouse, Psychology Today, Stern, Country Weekly*, and *Page Six Sunday Magazine* (*NY Post*) and many others. He has had over 100 double-page spreads in the National Enquirer.  His photographs of amazing stunts, performed with motorcycles, airplanes, trains, and other vehicles, were featured on such television shows as: *That's Incredible!, The World's Greatest Stunts, Stuntmasters, Guinness World Record Spectaculars, Ripley's Believe It Or Not*, and *I Dare You*.  Werner's portfolio of images has also been featured in a 16-page spread in both French and Italian *Photo* magazines, with pickups appearing in *Panorama* magazine (Netherlands), *Stern* (Germany), *Photo District News* (US), *Mad* magazine (France), and the 25th anniversary issue of *New Look* magazine.  Many of his iconic photographs were also chosen to be published in the TALK/MIRIMAX coffee table book "The National Enquirer, Thirty Years of Unforgettable Images."  Jeffery Werner is a member of the Los Angeles Press Club and the American Society of Media Photographers, and is the CEO of an editorial photo syndication agency, Incredible Features, Inc.

      12.    Mr. Werner has developed a specialty in photographing stunts and stuntmen and women.  His attention to detail, even while filming dangerous stunts with his signature 15-camera remote photography set-up, has exposed him to the danger involved in getting very close to the action.  Capturing these explosive photo sequences landed him the exclusive honor of being the only still photographer inducted into The Stuntworld Hall of Fame.  Featured on a segment of "The Adventures" TV show, he was referred to as the "da Vinci of daredevil photography" (https:// helldriversmovie. wordpress.com/2008/11/10/incredible-stunts-book/).   French *Photo* called him the

"incredible but true photographer" and Caesar's Palace chose him as the official photographer for Robbie Knievel's jump across fountains that was covered by numerous magazines and TV outlets around the world, including *Life* and *Sports Illustrated*. Werner's body of stunt photography is displayed in 2009 coffee table book, *Incredible Stunts: The Chaos, Crashes and Courage of the World's Wildest Stuntmen and Daredevils* (ISBN-13: 978-0-9796349-9-4).

13.     Mr. Werner is also well-known for his work with exotic animals, celebrities in their homes, remote aboriginal peoples, sideshow eccentrics, and people who have overcome incredible obstacles.  Mr. Werner has a growing "outsider art" reputation, and his work was the subject of a retrospective gallery exhibition at the Annenberg Space for Photography in Los Angeles in 2009.  Vince Streano, photographer and President Emeritus of the American Society of Media Photographers, has said that "Jeff is the Diane Arbus of the 21st century" because he crosses social lines to celebrate the odd - rather than belittle his subjects.

14.     The uniqueness of Mr. Werner's portfolio, and his talent, have resulted in substantial licensing opportunities throughout the years on which he relies to research and fund future photo shoots and to pay himself and his staff at Incredible Features, Inc. Mr. Werner has always maintained the publishing rights to his works, knowing they would provide the revenue to produce his next story.  Mr. Werner relies on income generated from licensing his photograph for his living.  Plaintiff employs a staff dedicated to researching new opportunities for photo shoots, as well as managing, monetizing, and policing the intellectual property of Plaintiff's portfolio.

15. Unfortunately, a multitude of unauthorized works by Mr. Werner are now on the internet as a result of intellectual property theft. The magnitude of this theft is a baleful compliment to his talents: web pirates, who pay nothing for stolen content, can select the best.

16. Mr. Werner's syndication company, Incredible Features, Inc., which licenses his work, has now been forced to add additional staff to discover piracy and to help collect the revenues due to him from the tide of copyright infringements. The policing of his intellectual properties became a cumbersome and expensive task which adds to the cost of every image produced. As in the past, despite the constant struggle against internet piracy, Werner still relies on these revenues to produce his next incredible story and to pay his staff and vendors.

## Defendants are, on Information and Belief, Systematically Engaged in the Business of Profiting from Internet Piracy

17. On information and belief, ELITEDAILY.COM was, at all material times since its creation in February, 2012, a "clickbait" website that primarily published short articles of misappropriated and unoriginal content. Advertisers pay for unique visitor impressions ("clicks") drawn to the bait page from social media. Approximately 36% of Elite Daily's unique visits are from Facebook, and the site has a "bounce rate" of 77.6%, meaning that baited visitors leave after a single page view. (http://www.alexa.com/ siteinfo/ elitedaily.com)  In short, links to the Elite Daily site were posted on Facebook and other social media sites, those posts were liked and retweeted, and this drove traffic and ad revenue to the ELITEDAILY.COM.

18.     Based upon its exploitation of the work of Mr. Werner and, on information and belief, other similarly-situated victims of internet content piracy that provide its inventory of content, Elite Daily grew rapidly into a very successful website.  *See* http://petapixel.com /2015/03/19/ elitedaily-sued-by-photographer-for-sharing-photos-in-blog-post-without-permission/)  In January, 2015, the *Wall Street Journal* reported that ELITEDAILY.COM had approximately 33.3 million unique U.S. visitors in December. (http://www.wsj.com/articles/u-k-s-daily-mail-acquires-u-s-website-elite-daily-1422631448)  Britain's Daily Mail & General Trust, PLC, acquired Elite Daily in January, 2015 for $47 million.  *Id*.  On information and belief, that success is an artifact of dealing substantially in pirated intellectual property.

## Mr. Werner Created and Registered the Protected Work

19.     In or about August, 2012, Mr. Werner discovered a story on a woman in Rochester, New York, who had started a unique new business of cuddling clients.  This new business was named "The Snuggery."  Plaintiff and his staff negotiated a contract with The Snuggery that gave Plaintiff the right to a photo shoot and rights to exploit images of The Snuggery.

20.     In September 2012, Mr. Werner flew to Rochester with an assistant to hold a photoshoot at The Snuggery.  At his own expense, he hired two local assistants, a makeup artist, and two models to depict Snuggery clients.

21.     The Snuggery photos (the "Protected Work") generated considerable interest.  Until digital theft harmed their value, The Snuggery photos were licensed to magazines, newspapers and TV outlets around the world, including *Inside Edition, In Touch Magazine, the National Examiner, the Sun, The Daily Mail, AOL*, and *ABC News*.

7

22. Mr. Werner registered his work with the Copyright Office on October 25, 2012 as VAu 1-119-467. *See* Certificate of Registration at Exhibit "A."

### Elite Daily Infringed Mr. Werner's Copyright

23. On or about November 5, 2012, Elite Daily posted an "original" article allegedly written by editors "Julian Sonny" and/or "Stephen Willard" that published copies of two of Mr. Werner's images, and did so without acquiring a license or authorization to publish the work. The article (the "Infringing Work") was posed to ELITEDAILY.COM's site to drive traffic and advertising revenue. *See* copy of the Infringing Work at Exhibit "B."

24. On information and belief, Elite Daily staff use a variety of fictitious names, biographies and photographs. Accordingly, "Julian Sonny" and "Stephen Willard" may be pseudonyms and that Does 1-10, or some of them, copied and posted the article containing the Protected Work.

25. The Infringing Work clipped two images from the Protected Work to create a derivative work consisting of a single conjoined photograph. This derivative work was inscribed with a metadata file name showing a creation date of November 5, 2012 and the name "elite-daily-jackie-samuel-professional-cuddler.jpg." *See* metadata identifying Mr. Werner's work as that of Elite Daily at Exhibit "C."

26. That derivative work was composed of the images identified as "jeffery_werner_snuggery_011.jpg" and "jeffery_werner_snuggery_017.jpg" in the copyright registration. *See* Exhibit "A."

27. The Infringing Work was, on information and belief, copied in part from the web site of the *Daily Mail* newspaper, a syndication licensee of Incredible Features.

Incredible Features provided its licensees with many photographs that they may select from and crop or otherwise reformat, and it also provides them with editorial copy that licensees may rewrite under their own staff's bylines.  The right-hand image in the Infringing Work is identical to an image that appeared thus-formatted and cropped in the *Daily Mail*, and the text of the Infringing Work consists of verbatim selections from the *Daily Mail* text rewritten by Louise Boyle.  *See Daily Mail* article first published on DAILYMAIL.COM on November 4, 2012, and updated November 9, 2012 at Exhibit "D."

28.     The *Daily Mail*'s image bore a prominent copyright notice: "© Incredible Features/Barcroft M."  That notice was Copyright Management Information ("CMI") for purposes of 17 USC § 1202.

29.     Defendants removed the CMI before publishing the Infringing Work on ELITEDAILY.COM in an attempt to conceal their copyright infringements.

30.     Elite Daily's illegal copying of Mr. Werner's images has resulted in a diminution in the value of the Protected Work.  Mr. Werner's ability to license the material to paying syndication customers was diminished when the same material was pirated, stripped of its CMI, and published by Elite Daily without authorization or payment.

31.     While the extent to which Elite Daily's pirated derivative work has caused the Protected Work to be republished is presently unknown, Mr. Werner has discovered the derivative work circulating in pirate web sites around the world.  *See* Exhibits "E" and "F."

32.  On discovering Elite Daily's infringement, Incredible Feature's agent, Brian Wolff of International Intellectual Property, Inc. ("IIPI"), wrote to Elite Daily on February 11, 2015, enclosing a copy of Mr. Werner's copyright Certificate of Registration and demanding that Elite Daily cease and desist from its unauthorized copying of the Protected Work, and that it account for its use.  Brian Wolff of IIPI conveyed an offer from Incredible Features to issue back-licenses for unauthorized uses.  *See* letter dated February 9, 2015, from Brian Wolff to David Arabov at Exhibit "G."

33.  Mr. Arabov signed for receipt of the letter on February 11, 2015 using his initials, "DA."  *See* USPS Delivery Information letter dated February 18, 2015, at Exhibit "H."  However, Elite Daily did not respond to that cease and desist letter, refused to provide an accounting or payment, and did not take the Infringing Work down from its website.

34.  On March 2, 2015, Mr. Wolff again wrote to Mr. Arabov including a copy of the letter dated February 9, 2015.  *See* letter dated March 2, 2015, from Brian Wolff to David Arabov at Exhibit "I."

35.  Elite Daily again did not respond to that letter, refused to provide an accounting or payment, and did not take its Infringing Work down from its website.

36.  On March 10, 2015, Mr. Wolff again wrote to Mr. Arabov stating that Mr. Werner would take legal action if Elite Daily continued to ignore Mr. Werner's cease and desist demand, demand for an accounting, and offer to back-license the infringing uses.  *See* letter dated March 10, 2015, from Brian Wolff to David Arabov at Exhibit "J."

37.  On or about late March, 2015, Elite Daily finally removed the Infringing Work from its website.

38. Elite Daily intentionally infringed Mr. Werner's copyright in the Protected Work in disregard of clear copyright notices, and it altered visible embedded CMI to avoid detection of its illegal conduct. Indeed, it inserted its own metadata as if it was the owner of the work.

39. Apart from the particular injury to Mr. Werner, Elite Daily's practice of intellectual property piracy threatens to diminish the market for photographic and other creative works. If authors who organize as businesses in order to license their works find themselves in competition with their own works published by internet content pirates who simply steal that work for commercial exploitation, the authors cannot succeed. Very few authors will be able to produce professional-grade content by investing time, effort and money in creating works, and other piracy sites will be encouraged to likewise acquire their stock in trade by theft. That is precisely the misconduct that the Copyright Act was enacted to deter and punish.

## COUNT I

### *Mr. Werner v. All Defendants*
### (Copyright Infringement, 17 U.S.C. § 501)

40. Mr. Werner incorporates by reference all the allegations of paragraphs 1 through 37.

41. Mr. Werner is the author and copyright owner of the Protected Work.

42. Defendants have reproduced, displayed, distributed or otherwise copied the Protected Work without Mr. Werner's license or authorization.

43. The actions and conduct of Defendants as described above infringe upon the exclusive rights granted to photographers under 17 U.S.C.A. 106 to display,

reproduce and distribute their work to the public.  Such actions and conduct constitute copyright infringement under the Copyright Act of 1976, 17 U.S.C.A. 501.

44. Mr. Werner has complied in all respects with 17 U.S.C. §§ 101 et seq., and secured and registered the exclusive rights and privileges in and to the copyrights of the above-referenced works pursuant to 17 U.S.C. § 408.

45. Having timely registered his copyright, Mr. Werner is entitled to elect statutory damages under 17 USC § 412 and § 504(c), in an amount of not less than $750 or more than $30,000 per infringement.

46. Defendant's infringement was intentional.  On information and belief, Elite Daily substantially operated, at all relevant times, as a pirate website.  Its business model was, on information and belief, predicated on theft and commercial exploitation of intellectual property owned by others.  Indeed, even after receiving a cease and desist demand from Mr. Werner's agent, Mr. Wolff, Elite Daily refused to take down the Infringing Work during the period from February 11, 2015, to late March, 2015.

47. Because Defendants' copyright infringement was willful, and because Mr. Werner registered his copyright, he is entitled to enhanced statutory damages pursuant to 17 U.S. Code § 504(c)(2) in the sum of up to one hundred fifty thousand dollars ($150,000).

48. In the alternative, Mr. Werner is entitled to elect recovery of his actual damages and Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. 504(b). He is thus entitled to an accounting of Defendants' profits from advertising and from the proceeds of the sale of the site to Daily Mail & General Trust, PLC, based on

Defendants' exploitation of Mr. Werner's Protected Work and that of similarly-situated victims of internet content piracy.

49. Within the time permitted by law, Mr. Werner will make his election between actual damages and profit disgorgement, or statutory damages, depending upon which is larger.

50. Prior registration also entitles Mr. Werner to seek an award of attorney's fees pursuant to 17 USC § 412 and § 505.

## COUNT II
*Mr. Werner v. All Defendants*
**(Violation of Digital Millennium Copyright Act)**

51. Mr. Werner incorporates by reference all the allegations of paragraphs 1 through 48.

52. Defendants intentionally removed copyright management information ("CMI") from the Protected Work the republished it knowing that they had removed or altered CMI without authority of the copyright owner or the law, and knowing that their misconduct would thereby enable, facilitate, or conceal its infringement of Mr. Werner's rights in his copyright. Defendants had reasonable grounds to know that their removal of CMI would induce, enable, facilitate or conceal their infringement.

53. By removing CMI, Defendants also encouraged others to replicate Elite Daily's infringement, which did occur.

54. After removing and altering the CMI from a copy of the Protected Work in order to conceal its infringement, Defendants damaged Mr. Werner by illegally publishing the Infringing Work on the ELITEDAILY.COM website.

55. Defendants damaged Mr. Werner not only by their infringements, but also by concealing that infringement by removing the identifying CMI, in an amount to be proven at trial.

56. On information and belief, Defendants' actions were knowing, willful, reckless, and so warrant enhanced damages and penalties.

57. Mr. Werner is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. §1203.

## COUNT III

*Mr. Werner v. Mr. Abramov and Does 1-10*
(Vicarious and/or Contributory Copyright Infringement)

58. Mr. Werner incorporates by reference all the allegations of paragraphs 1 through 55.

59. Plaintiff is the author and owner of the copyrights to the Snuggery Photographs. All of the works at issue in this action are the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.

60. On information and belief, Mr. Abramov and Does 1-10 knowingly induced, participated in, aided and abetted in, and profited from the illegal reproduction and distribution of the Protected Works.

61. On information and belief, Mr. Abramov and Does 1-10, if they were not direct infringers, knew or should have known of the infringing activity.

62. On information and belief, Mr. Abramov and Does 1-10 provided the site and means for such infringing activity to occur through ELITEDAILY.COM, and they encouraged Elite Daily's employees and representatives to discover and post to ELITEDAILY.COM pirated content that they knew was the property of others.

63.     Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for the infringement of Mr. Werner's rights in the Protected Work.

64.     As a direct and proximate result of said acts of vicarious and contributory infringement, Mr. Werner has suffered substantial damages in an amount to be proven at trial, as well as additional and special damages in an amount to be proven at trial.

65.     Mr. Werner is entitled to actual damages and disgorgement of direct and indirect profits realized by Defendants, and each of them, in an amount to be proven at trial or, at his election, statutory damages.

66.     Because Defendants' copyright infringement was willful, Mr. Werner is entitled to enhanced statutory damages in the sum of up to $150,000 per infringed work.

67.     Within the time permitted by law, Mr. Werner will make his election between actual damages and profit disgorgement, or statutory damages, depending upon which is larger.

68.     Mr. Werner is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## **RELIEF**

WHEREFORE, Mr. Werner requests judgment against the Defendants for:

1.      A finding that Defendants infringed Mr. Werner's copyright interests in the Protected Work by copying and publishing it for commercial purposes without any license or consent;

2.      A joint and several award of actual damages and disgorgement of all of Elite Daily's profits attributable to the infringement, as provided by 17 U.S.C. §504, in an

amount to be proven at trial or, in the alternative, at Mr. Werner's election, statutory damages for willful infringement pursuant to 17 U.S.C. §504(c)(1) or (2), whichever is larger;

3. An order, pursuant to 17 U.S.C. 502(a), enjoining the Defendants from any infringing use of any of Mr. Werner's works;

4. An order, pursuant to 17 U.S.C. §§ 502 and 503, impounding or enjoining Defendants to turn over to Mr. Werner all copies of the Protected Work claimed to have been made or used in violation of the exclusive right of the copyright owner; all plates, tapes, film negatives, or other articles by means of which such copies may be reproduced; and records documenting the manufacture, sale, or receipt of things involved in any such violation.

5. A joint and several award of Mr. Werner's attorney's fees and costs pursuant to 17 U.S.C. §505.

6. A finding that Defendants violated the Digital Millennium Copyright Act, 17 U.S.C. 1202, by knowingly removing Plaintiff's CMI attached to the Protected Work;

7. A joint and several award of the actual damages, pursuant to 17 U.S.C. §1203, suffered by the Mr. Werner as a result of the violation of the Digital Millennium Copyright Act, and profits of Defendants that are attributable to the violation and are not taken into account in computing the actual damages or, in the alternative, at Mr. Werner's election, statutory damages in the maximum amount of $25,000 per infringement, as provided pursuant to 17 U.S.C. §1203, whichever is larger;

8. A joint and several award of Mr. Werner's attorney's fees and costs pursuant to 17 U.S.C. §1203;

9. Pretrial interest as permitted by law;

10. A constructive trust be entered over any revenues or other proceeds realized by Defendants, and each of them, through their infringement of Mr. Werner's intellectual property rights; and

11. Such other relief as the Court deems just and proper.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**


By: __/s David B. Picker_____
David B. Picker, Esquire
Bruce Bellingham, Esquire
(applicant for pro hac vice admission)
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8916
*dpicker@lawsgr.com*
*bbellingham@lawsgr.com*

August 11, 2015                             *Attorneys for Plaintiff*